[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal by Pathways, Inc. from a decision of the defendant denying Pathways' application for special permit and site plan approval to convert an eight bedroom house to a convalescent home in the R-20 zone for sixteen individuals on property located at 509 East Putnam Avenue, Greenwich, Connecticut.
Section 8-30g provides in part as follows:
 Sec. 8-30g. Affordable housing land use appeals procedure. (a) As used in this section: (1) "Affordable housing development" means a proposed housing development (A) which is assisted housing or . . . (3) "assisted housing" means housing which is receiving, or will receive, financial assistance under any governmental program for the construction or substantial rehabilitation of low and moderate income housing.
The court finds that the application filed by Pathways, Inc. is an affordable housing development since it is an assisted housing application that will receive financial assistance under two separate governmental programs for the construction or substantial rehabilitation of low and moderate income housing.
The court finds that Pathways acquired the subject property on April 1, 1998, and continues to own the property.
5.07% percent of Greenwich's existing housing units qualify as affordable housing.
On June 22, 1999, the defendant Planning and Zoning Commission denied the special permit/site plan application of Pathways, Inc. The court CT Page 11177 finds that the plaintiff Pathways, Inc. is aggrieved for the purpose of this appeal since its application for an affordable housing application was denied.
Notice of the denial was sent to Pathways by the Town Planner/Zoning Enforcement Coordinator by letter dated July 1, 1999. That letter reads as follows:
July 1, 1999
 Mr. Eric V. P. Brower AICP 81 Holly Hill Lane Greenwich, CT 06830
 Mr. Daniel W. Moger, Jr., Esq. Jacques Moger, P.C. 534 East Putnam Avenue Greenwich, CT 06830 RE: Pathways — Special Permit/Site Plan #2042 Conversion of existing 8 bedroom house to a Convalescent home for 16 individuals on property located at 509 East Putnam Avenue in the R-20 zone.
Dear Messrs. Brower and Moger:
At a regular meeting of the Planning and Zoning Commission held on Tuesday June 22, 1999 and upon a motion made by Mr. LeBien and seconded by Mrs. Siefert the following resolution was adopted by a 4-0-1 (Voting to deny: Messrs. Joyce and LeBien and Mesdames Siefert and Grant; voting to abstain: Mrs. Barr)
WHEREAS, the Commission held public hearings on May 11 and June 3, 1999 and took all testimony on this item as required by law; and
WHEREAS, the Commission notes that the Pathways proposal is to establish a new group living facility with 16 bedrooms and room for one sleep-in staff member, with shared kitchen and other common areas for those of various ages recovering from mental illness; and
WHEREAS, the Commission notes that Pathways proposes this facility for 16 persons of various ages recovering from mental illnesses, as a "Convalescent" facility under Sec. 6-94 (b)(1) and sought a Special Permit based on this section of the regulations which states, ". . . convalescent homes, or other health care facilities for the elderly. . ." and Pathways stated that this language allows a convalescent home or CT Page 11178 other facility for persons of any age not just elderly; and
WHEREAS, the Commission however does not concur with this interpretation of its regulations, and finds that Pathways' proposed facility for persons of all ages does not come within the plain language of Sec. 6-94 (b)(1) which permits "convalescent homes, or other health care facilities for the elderly"; that the word "elderly" in this section of the regulations does not apply to persons of all ages; that "convalescent homes, or other health care facilities for the elderly" is clear and unambiguous; and therefore that the proposed use and application does not meet the definition of "convalescent home" as set forth in Sec. 6-94 (b)(1) of the regulations; and
WHEREAS, the Commission finds that the number of residents (16) requires a significantly large addition of 5,000 sq. ft., to the already large 8 bedroom house of 4,800 sq. ft. and this number of residents and additional square footage requires a major re-design and expansion of the septic system, and an increase in parking and driveway areas and alternatives should be explored to minimize the impact on the adjacent RA-1 acre Brookridge neighborhood and therefore does not meet the special permit and site plan standards of Sections 6-15 and 6-17; and
WHEREAS, the Commission notes that, per the 4/13/99 memo from the local Department of Health, the local and state health departments approval would be conditional on occupancy of one resident per bedroom which would allow the proposed septic system design to accommodate the proposed occupancy with the projected water useage, and ultimately sewage disposal, based on state classification of a residential group home and not as a convalescent facility under State Health codes; further the Commission notes that the State Health code states that a convalescent facility has medical functions and facilities included in the facility and this plan does not call for such medical on site treatment and therefore the State does not require the septic system to be designed for the convalescent classification; and
WHEREAS, the Commission finds that this site and location on the Post Road may be appropriate for such a use at a smaller scale and the proposed re-use of this 8 bedroom residence as a home for such persons of various ages recovering from mental illnesses might enhance and preserve the unique architecture of the structure and this section of the Post Road streetscape which consists of 4 large Victorian residences with great front lawns and large old trees on oversized lots reflecting an earlier period of town history and development patterns. The Commission suggests that the applicant scale back the addition and number of residents which may then reduce the need for such a large expansion of CT Page 11179 the septic system; and
WHEREAS, the Commission discussed several alternative sections of the regulations which might offer the applicant an opportunity to re-examine and made application to Planning Zoning to modify language to be more inclusive and provide for such a proposed use; and
THEREFORE BE IT RESOLVED that the application of Eric V.P. Brower, authorized agent for record owner Pathways Inc., for a special permit and site plan #2042 for new addition and conversion of an existing 8 bedroom residence for use as a convalescent home for 16 persons at 509 East Putnam Avenue and Brookridge Drive in the R-20 zone per Sec. 6-94 (b)(1) and Sec. 6-17 and 6-15 of the Building Zone Regulations is hereby denied without prejudice.
If you have any questions, please call this office. Very truly yours,
 /ss/ Diane W. Fox Town Planner/Zoning Enforcement Coordinator
 cc: James Maloney Bruce Dixon Garo Garabedian Caroline Baisley Michael Long Donat C. Marchand Charles Campbell, Jr.
The transcript of the meeting by the defendant Commission held on June 22, 1999, clearly shows that the only grounds that the Commission relied upon the deny Pathways' application was that the application did not fit the definition of § 6-94 (b)(1). Section 6-94 (b) of the building zone regulations of the town of Greenwich designates certain uses as permissible in various residential zones by the planning and zoning commission under Special Permit and states in relevant part as follows: "(1) Hospitals; clinics; nursing homes; homes for the aged; sanitariums; convalescent homes, or other health care facilities for the elderly". The zoning regulations do not define "convalescent homes". The application as submitted was for 16 mentally handicapped individuals to reside on the premises. Those 16 adults would not necessarily be "elderly". This court agrees with the rationale found in Return of Record 32, a letter to the Commission dated May 18, 1999, that the application fits within the definition of a convalescent home. However, even assuming that the convalescent home definition requires that the residents be elderly, this CT Page 11180 court further finds that the mere fact that the application does not meet zoning regulations as a result of the residents not being restricted to elderly is not a sufficient reason to deny the application.
In discussing the issue of whether an affordable housing application may be denied on grounds that it does not comply with underlying zoning of an area, the court in Wisnowski v. Planning and Zoning Commission ofthe Town of Berlin, 37 Conn. App. 303, (1995) stated in part as follows:
 . . . The commission's first claim is that the trial court should have found that it was necessary for the plaintiffs to seek a zone change prior to submitting a § 8-30g subdivision proposal that does not comply with the underlying zoning of an area. . . . Our conclusion is that the plain and unambiguous language of § 8-30g does not contemplate a denial of an affordable housing subdivision application on the ground that it does not comply with the underlying zoning of an area . . . The burden of proof established in § 8-30g is a specific, narrow standard that a commission must satisfy on appeal. The plain and unambiguous language does not list noncompliance with zoning regulations as a reason to affirm the denial of an affordable housing subdivision application . . . The narrow rigorous standard of § 8-30g dictates that the commission cannot deny an application on broad grounds such as noncompliance with zoning. Section 8-30g anticipates that there will be many different types of applications that may be brought to many different types of agencies. Whichever zoning authority is asked to deal with the application, a zone change will necessarily be embodied in the application, either as to use, or as to bulk . . . No formal zone change application is needed because the act is designed to allow circumvention of the usual exhaustion of zoning remedies and to provide prompt judicial review of a denial of an application. Huntington Branch NAACP v. Huntington, 844 F.2d 926 (2d Cir. 1988); Huntington Branch NAACP v. Huntington, 689 F.2d 391 (2d Cir. 1982), cert. denied, 460 U.S. 1069, 103 S.Ct. 1523, 75 L.Ed.2d 947 (1983) . . . The "key purpose of § 8-30g
is to encourage and facilitate the much needed development of affordable housing throughout the state." West Hartford Interfaith Coalition, Inc. v.CT Page 11181 Town Council, supra, 228 Conn. 511. The legislative history indicates that the legislature intended to accomplish this goal by creating specific legislation that affects only affordable housing applications, not the overall zoning scheme. Therefore, applications that do not fit into the definition of an affordable housing application are not affected by § 8-30g. If an application does satisfy the definition of an affordable housing application, however, then the commission must satisfy the increased burden of proof in order to deny the application effectively. Under these circumstances, nonconformity of zoning is not, per se, a reason to deny the application. Section 8-30g does not allow a commission to use its traditional zoning regulations to justify a denial of an affordable housing application, but rather forces the commission to satisfy the statutory burden of proof . . . Instead of simply questioning whether the application complies with those regulations, however, under § 8-30g, the commission considers the rationale behind the regulations to determine whether the regulations are necessary to protect substantial public interests in health, safety or other matters . . . Section 8-30g (c) provides that if the commission fails to satisfy its burden of proof, the trial court, "shall wholly or partly, revise, modify, remand or reverse the decision from which the appeal was taken in a manner consistent with the evidence in the record before it." (Emphasis added.)
I. The Standard of Review.
As a result of P.A. 00-206, there are two standards of judicial review under § 8-30 (c)(1)(A) through (D).
Under § 8-30g (c)(1)(A), the court must determine, as prior to the enactment of P.A. 00-206, § 1(g), whether the commission has shown that its decision is supported by "sufficient evidence" in the record. Under subparagraphs (B), (C) and (D) of the statute, however, the court must review the commission's decision independently, based upon its own scrupulous examination of the record. Therefore, the proper scope of review regarding whether the commission has sustained its burden of proof, namely that its decision is based upon the protection of some substantial public interest; and has not sustained its burden of proving that the public interest of zoning compliance clearly outweighs the need CT Page 11182 for affordable housing; and there are no modifications that reasonably can be made to the application that would permit the application to be granted — requires the court, not to ascertain whether the commission's decision is supported by sufficient evidence, but to conduct a plenary review of the record in order to make an independent determination on this issue.
This court finds that the reason given by the Commission in its minutes for denying the application is not supported by sufficient evidence in the record. This court from a review of the Commission's decision and based on a scrupulous examination of the record finds that the reason stated by the Commission in the minutes for denying the application is not based upon the protection of some substantial public interest; and has not sustained its burden of proving that the public interest of zoning compliance clearly outweighs the need for affordable housing. This court has also reviewed all of the reasons stated by the Town Planner/Zoning Enforcement Coordinator in the letter to the plaintiff dated July 1, 1999. This court has scrupulously reviewed the record and finds that insofar as the increase in parking and driveway areas are concerned that the Commission has not sustained its burden of proving that its decision is based on the protection of some substantial public interest, and has not sustained its burden of proving that the public interest in parking and driveway areas clearly outweighs the need for affordable housing, and has not sustained its burden that there are no modifications that reasonably can be made to the application that would permit the application to be granted. This court has also reviewed all of the other reasons in the letter in question and finds that from a scrupulous review of the record that the Commission has not sustained its burden of proof, namely that its decision is based upon a protection of some substantial public interest; and has not sustained its burden that any such claimed public interest clearly outweighs the need for affordable housing; and has not sustained its burden that there are no modifications that reasonably can be made to the application that would permit the application to be granted.
The defendant Commission in its pretrial brief dated May 10, 2002, claims that the appeal is governed by the defendant's special defense that was admitted namely that the plaintiff and defendant entered into a Stipulation which the court is bound to approve of.
After this appeal was filed, Pathways, Inc. and the Zoning Commission of the town of Greenwich entered into a Stipulation for Judgment dated January 28, 2000. That Stipulation provided as follows:
 Whereas, the above-captioned matter is Pathways, CT Page 11183 Inc.'s ("Pathways") affordable housing appeal from a decision of the defendant Planning and Zoning Commission of the Town of Greenwich ("Commission") denying the plaintiff's application for a special permit and site plan approval for an addition to and conversion of an existing 8 bedroom residence for use as a group home for 16 mentally handicapped individuals at 509 East Putnam Avenue in the R-20 zone in the Town of Greenwich, in which appeal the plaintiff seeks relief pursuant to Connecticut General Statutes § 8-30 (g);
 Whereas, the parties have reached a settlement reducing the number of residents to 10 (excluding any non-resident staff) as shown on the revised 6-page site plan, plot plan and subsurface disposal plan by Rocco V. D'Andrea, Inc. dated January 13, 2000, and on the revised 7-page architectural plan by Buchanan Associates Architects dated January 13, 2000, both of which are submitted herewith and made a part hereof; and
 Whereas, it is important to proceed expeditiously with the project now that agreement has been reached.
 Now, therefore, the parties hereby stipulate and agree that judgment may be entered upon the following terms and conditions:
 1. The number of dwelling units and the number of residents on the site shall not exceed ten.
 2. The residents shall be mentally handicapped individuals whose housing is "assisted" within the meaning of Connecticut General Statutes § 8-30g
(a)(3), as the same may be amended. Any increase in the number of such residents or change in use shall require further application to and approval from the Commission. Professional staff shall be limited to two attendants during the day and one overnight. One overnight staff attendant shall not be deemed a resident.
 3. The site shall be developed substantially in accordance with the revised 6-page site plan, plot CT Page 11184 plan and subsurface disposal plan by Rocco V. D'Andrea, Inc. dated January 13, 2000, and the revised 7-page architectural plan by Buchanan Associates, Architects, dated January 13, 2000 attached hereto (calling for a 3,200 square foot addition and expansion of the 4,818 existing building to a total of 8,190 square feet) with such minor changes (a) as may be necessary to comply with governmental laws, rules and regulations applicable to the construction or development of the project, without further approval by the Commission, or (b) pursuant to paragraph 7 below.
 4. Nothing herein shall preclude Pathways or any successor from seeking to tie in to the town sewer should such an opportunity present itself.
 5. Notwithstanding approval from the Commission upon entry of the judgment contemplated by this stipulation, Pathways must still comply with requirements of all other town agencies and departments, including engineering, building and health.
 6. The Court shall retain jurisdiction to resolve any disputes arising out of this stipulation, the contemplated judgment or its implementation.
 7. Pathways agrees to submit the attached plans (excepting septic plans) for review and comment by the Architectural Review Committee ("ARC") of the Town of Greenwich which is advisory to the Commission. Any change in plans at the ARC's request shall not require further approval by the Commission, unless Pathways requests it. Pathways agrees to make such changes to the plans based on the ARC's comments as Pathways, in its reasonable discretion, determines to be financially reasonable and aesthetically appropriate.
 8. The date of approval of the site plan and special permit by the Commission shall be the date this stipulation is approved by the Court and final judgment is entered.
 9. Judgment may enter in accordance with this stipulation CT Page 11185 after a hearing in accordance with General Statutes § 8-8 (n) without costs to either party.
The court is not persuaded by that argument, in view of the fact that the intervenor has not agreed to the provisions of that Stipulation.
The intervenor has raised a number of issues in claiming that the decision of the defendant Commission should be sustained and the appeal dismissed. Brookridge makes the following claims:
 a. The septic system proposed by Pathways violates provisions of both the Greenwich Municipal Code and the Public Health Code and therefore is reasonably likely to unreasonably pollute the natural resources of the state.
Under that general category, Brookridge claims that the septic system must comply with all provisions of both the Greenwich Municipal Code and the Connecticut Public Health Code and that such compliance does not exist.
The court finds that the intervenor has not met its burden of proving that the septic system proposed by Pathways, Inc. violates the provisions of either the Greenwich Municipal Code and the Connecticut Public Health Code.
A memorandum from the town of Greenwich Environmental Hygienist dated April 13, 1999, provides as follows:
 The proposed septic system design plans, dated January 14, 1999, have been reviewed by the State Department of Health (see comments attached). According to the State, this restriction would allow the design to accommodate the proposed occupancy, water usage and ultimately the sewage disposal. The design criterion is proposed for 16 residents (one resident per bedroom) and one supervisor at 1700 gallons per day, which requires Planning and Zoning approval. Also, a storm water management plan must be approved by the engineering department prior to approval of the design plan. Based upon the above comments and the inclusion of population restrictions, this Department would recommend approval of this project.
The state of Connecticut, Department of Public Health by letter dated CT Page 11186 January 25, 1999, approved of the proposed subsurface sewers disposal system for 16 residents and a supervisor. The comments to that approval by the Department of Public Health were as follows:
 1. Proposed system appears suitable for 16 residents and supervisor. Very important that P Z approval restrict this residential facility to a single occupant per room.
 2. If P Z approves, Greenwich Health Department can issue permits and approvals for system.
 3. Recommend PE be required to supervise and inspect site preparation and system installation.
 The town of Greenwich, Department of Health, has recommended approval of the subsurface sewage system by letter dated May 10, 1999, that reads as follows: B This office has recommended approval of the above project. The approval is based on the requirements from the State Department of Health outlined in our April 13, 1999 memo to your office (attached). This site will not require a 100% replacement area because the existing system will be replaced according to the public health code as part of the building permit approval process.
The expert witness on behalf of Brookridge testified that the septic system violates both the provisions of the Greenwich Municipal Health Code and the Connecticut Public Health Code. This court finds from a scrupulous review of the record that Brookridge has not sustained its burden of proof namely that the septic system proposed by Pathways violates the provisions of either the Greenwich Municipal Code and/or the Connecticut Public Health Code. This court further finds that Brookridge has not met its burden of proving that the septic system is likely to unreasonably pollute the natural resources of the state. This court finds that the public interests in protecting the natural resources of the state in this case does not clearly outweigh the need for affordable housing since Brookridge has failed to prove that those interests would be adversely affected as a result of the design of the septic system and further finds that Brookridge has failed to meet its burden that there are no modifications that reasonably can be made to the application that would permit the application to be granted.
b. Brookridge also claims that the investigation into the site violated section 4-93 of the Greenwich Code because not all tests submitted for approval of the septic system were witnessed by the Greenwich Department of Health. This court finds that that claim is not based upon the protection of some substantial public interest, and Brookridge has failed CT Page 11187 to meet its burden that the witnessing of tests clearly outweighs the need for affordable housing.
c. Brookridge also claims that the septic system as designed does not provide for a reserve area as required by subsection 4-102 (b) of the Greenwich Code. The court is also not persuaded by that claim. SECTION4-102 (B) OF THE GREENWICH CODE PROVIDES IN PART AS FOLLOWS:
 (1) Where public sewers are not available, prior to the issuance of a building permit for any addition, alteration, conversion or change of use, the applicant for the building permit shall obtain certification from the Director that the existing sewage disposal system meets all of the requirements of this Article and the Public Health Code and that a suitable area for expansion exists on and shall remain available on, the property to provide for future expansion or repair of the subsurface sewage disposal system. (Emphasis provided.)
 (2) The applicant shall furnish the Director, with such information as he deems necessary to make such determination.
 (3) When expansion of a sewage disposal system is deemed required by the Director, such expansion shall meet the requirements of this Article.
 (4) The size of the system shall be based on the requirements of the proposed building changes and uses.
 (5) Additions, conversions, and changes shall not interfere with the accessibility of septic system areas and/or well sites.
 (6) Where existing separating distances are less than required by these regulations, no further reduction shall be permitted.
The fact of the matter is that the Greenwich Code does not require that the reserve area be shown on the plans that are submitted.
The transcript of the hearing of May 11, 1999, at page 30 is in part as follows: CT Page 11188
MRS. BARR: You don't have to have a reserve area?
 MR. D'ANDREA: The health code is very specific on that, and we had that discussion in this building with Frank Schaub, specifically on this issue, because this is an expansion of an existing building, you're basically using your capacity, therefore, we don't usually do any more. We have identified areas where additional systems could be constructed, but it is unnecessary to show, and it would not be required by the health code.
MRS. BARR: But you have done some testing.
MR. D'ANDREA: Yes.
MRS. BARR: So there are other suitable areas.
 MR. D'ANDREA: Yes. There is an additional area suitable for the disposal of sewerage effluent. Yes, there are.
This court finds that there are additional areas where a sufficient reserve system could be constructed but that it is not necessary to show those areas on the plans that are submitted. This court therefore finds that Brookridge has not sustained its burden of proof that the failure to show the reserve area is based upon the protection of some substantial interests; and Brookridge has failed to meet its burden that the public interest in showing the reserve area on the plans clearly outweighs the need for affordable housing.
d. Brookridge also claims that the septic system violates the Greenwich Code and the State Code because the flow rates upon which it is designed are erroneous. This court finds that Brookridge has failed to meet its burden of proving that the flow rates are erroneous, has failed to prove that the flow rates involve the protection of some substantial public interest, and that the public interest clearly outweighs the need for affordable housing.
e. The claim of Brookridge that bait and switch tactics were used by the applicant is clearly rebutted by the record in this case.
The Brookridge District Association filed a Motion to Dismiss which this court previously denied, finding that the plaintiff has standing to CT Page 11189 bring this action pursuant to 8-30g, that the plaintiff qualifies as a person whose affordable housing application was denied, that the plaintiff demonstrated to the defendant that it was proceeding under the Affordable Housing Act, and that this court has subject matter jurisdiction. The intervener claims that Pathways' "bait and switch" tactics before the commission violate public policy and require the court to reject the proposed stipulation for judgment. Insofar as the stipulation for judgment is concerned, that stipulation was rejected by the court on the grounds that a stipulation cannot be approved of unless all parties have consented to the stipulation and the intervener did not consent. The court, however, finds its necessary to address the claims of "bait and switch". The intervener claims that "Pathways' never argued, or gave reasonable notice to, the commission that it considered this to be an Affordable Housing Act application." The court finds that there is no factual basis for that claim.
A letter from the applicant to the Town Planner/Zoning Enforcement Officer Return of Record 17a states in part as follows:
 The proposed uses or permitted use: it is a residential use, and this is a residential zone. We request your preliminary approval of this project so that we may proceed to the Architectural Review Committee and Final Site Plan application. This project meets the standards and requirements of P.A. 89-311 The Affordable Housing Act.
A letter to the applicant's representative from the applicant's attorney dated May 11, 1999, that was presented to the defendant commission at the public hearing as part of the Return of Record 27a provided in part as follows:
 You have asked whether the Application of Pathways, Inc. to the Planning and Zoning Commission to convert the existing structure of 509 East Putnam Avenue into a residence of 16 single rooms each to be occupied by a client of Pathways, Inc. would qualify as an "affordable housing application" under Public Act 89-311, now Section 8-30g, Connecticut General Statutes . . . Section 8-30g (f) rules out any special appeals procedure if a municipality has at least 10% of its dwelling units qualify as affordable housing under a list published periodically by the Commission of Economic and Community Development. The attached list secured on May 10, 1999 from the Commissioner CT Page 11190 indicates that Greenwich does not meet the required minimum of 10%. In my opinion, the Application of Pathways, Inc. is an "affordable housing application" as that term is used in Section 8-30g.
This court concludes that a review of the Return of Record clearly indicates that this application was filed pursuant to the Affordable Housing Act and no "bait and switch" tactics were used by the applicant. The failure of one or more Commission members to read the record that is submitted to it before rendering a decision does not constitute "bait and switch" tactics. An applicant for affordable housing does not have to parade up and down the aisle at a public hearing with signs saying "affordable housing application."
The applicant in this case does not simply seek to have the decision of the defendant Commission reversed and its application approved. Rather, the applicant is still willing to be bound by the Stipulation of Judgment that was entered into dated January 28, 2000. Under the provision of § 8-30g, if a Commission fails to satisfy its burden of proof, the trial court, "shall wholly or partly, revise, modify, remand or reverse the decision from which the appeal was taken in a manner consistent with the evidence in the record before it." In view of the position taken by the applicant that it wishes to be bound by the Stipulation for Judgment entered into dated January 28, 2000, this Court will not simply reverse the decision from which the appeal was taken. This Court, rather, in the exercise of its statutory authority orders that the decision of the Commission is revised and modified and orders that paragraphs 1 through 8 of the Stipulation for Judgment dated January 28, 2000 be complied with by the applicant and defendant Commission.
__________________, JTR AXELROD CT Page 11191